**STRIETELMEIER et, Plaintiffs, v. ANGELO et, Defendants.**

Common Pleas Court, Muskingum County.

No. 32984.   Decided October 4, 1951.

A. M. Henderson, Youngstown, Meyer, Johnson & Kincaid, Marvin Lewis & Pugh, Knapp & Miller, Zanesville, for plaintiffs.

William D. Holliday, Zanesville, for defendant Felix Angelo
C. F. Taplin, Cleveland, Clarence A. Graham, Zanesville, for defendants, Harris Coal Co. and R. C. and L. M. Harris.

## OPINION

By CROSSLAND, J.

DETERMINATION AND OPINION PURSUANT TO REPORT AND RECOMMENDATIONS OF THE REFEREE.

The above cause, which had its inception with the filing of the plaintiffs' original petition April 3, 1944, and its submission to the judge of the court following the last brief filed June 29, 1951, exceeding seven years, embraces evidence consisting of 723 pages of testimony and 35 designated exhibits, extensive pleadings, more extensive briefing, and the 82 pages of Referee's Report, all of which the undersigned has fully and thoughtfully read, studied, analyzed and considered.

Believing that an early and concise expression of ultimate findings and conclusions, although brief, is preferable in the interest of all parties and of the litigation rather than a detailed exposition of all contended and controverted issues and a minutely stated disposition thereof, the undersigned will conform his determination as to judgment accordingly.

The defendant Felix Angelo entered into two separate and distinct agreements with reference to his so-called Blue Diamond Mine No. 1 consisting of lands leased for coal stripping and marketing operations, ostensibly without knowledge by either party of the other's contract with Angelo at the time of execution.

First in point of time was the Memorandum of Agreement between Felix F. Angelo and Harris Coal Corporation, dated July 1, 1942, covering sale by and through Harris Coal Corporation excepting principally "all coal not loaded out in railroad cars."

Second in point of time was a contract between Felix Angelo and Henry W. Strietelmeier of August 3, 1942, which became the contract of plaintiffs', covering stripping and loading, to continue "so long as there remains coal to be mined under said lease or so long as it is profitable to strip and load the coal underlying the above described real estate." Said con-

tract further provided "that all money received from the sale of coal stripped and loaded under this contract shall be paid to Henry W. Strietelmeier."

Subsequently and before stripping and loading, sales and payments, each of said respective agreements became fully known to the other contracting parties dealing with Angelo, who thereupon entered into conferences and conversations relative thereto, out of which arose a practice or custom implementing the purposes and intentions of the respective contracts with Angelo, being in the one between Harris Coal Corporation and Angelo that the former should collect, distribute and disburse all receipts from rail loading sales and being in the one between plaintiffs and Angelo that plaintiffs should receive **their** money for stripping and loading "from the sale of coal stripped and loaded" rather than "all" money received therefrom.

For the purpose of the language of plaintiffs' contract whereby it was agreed by Angelo "that **all** money received from the sale of coal stripped and loaded under this contract shall be paid to Henry W. Strietelmeier" it was not only unnecessary but, in the circumstances and fact of the Harris contract, undesirable that plaintiffs be paid **all** money received from such sales, as the Harris bookkeeping could, would and did logically and more simply distribute and disburse directly to the parties to whom due the money received by the Sales Agent of Angelo, Harris Coal Corporation, after rightfully under its own Angelo contract first deducting and substracting money due it,—Harris Coal Corporation in effect becoming and being agent of plaintiffs in remitting to them for stripping and loading.

The only legal significance of the earlier date of the Harris agreement is the undoubted right and privilege accorded the Harris Coal Corporation to make all sales collections of rail shipped coal, which thereby precluded the payment to plaintiffs of "**all** money received from the sale of coal stripped and loaded under this (plaintiffs') contract." To conclude that plaintiffs were willing or agreed to be paid directly **no** money so received would not only be to put an unreasonable and illogical construction upon the purposes and effect of the conversations between plaintiffs and Harris and of the resulting and ensuing practice and custom in Harris Coal Corporation direct remittances to plaintiffs, but would likewise be to attribute to plaintiffs a puerile lack of understanding of their own financial safety in the manifest light of their positive contractual security against the dubious state of Angelo's credit. On the contrary, Angelo in his answer to

plaintiffs' third amended petition "admits—that the Harris Coal Corporation should collect all money for coal mined on said premises and sold by rail, and that The Harris Coal Corporation should pay to the plaintiffs their share of the money received from the sale of coal directly without the defendant, Felix Angelo, having any control whatever over said portion of the money or having any authority or right therein."

As a matter of law, the undersigned believes that the two contracts which the defendant Angelo made should be reconciled if it is reasonably possible to do so, that it is possible to do so so as to preserve and fulfill the essential purpose and intention of each, that such was the reason and occasion of the Harris—Strietelmeier—Singer conferences and conversations, and that pursuant thereto in fact and in deed Harris Coal Corporation undertook to and did remit directly to plaintiffs money due them under their contract with Angelo, by which contract Angelo acknowledged plaintiffs' right to be so paid and by which contract defendant Harris Coal Corporation was also bound in that connection, particularly after it had been giving effect to it throughout the entire period of the tripartite dealings except in the one month which is the subject matter of plaintiffs' original action.

When defendant Harris Coal Corporation, without plaintiffs' consent, paid to defendant Felix Angelo money which the latter admits "having no control over whatever, or having any authority or right therein," in face of the fact that plaintiffs stripped and loaded coal for Harris to sell in the first instance only because and by reason of payment to them for stripping and loading by Harris direct, said defendant violated a confidence and trust reposed in it by plaintiffs and breached its duty to them, without legal excuse or justification.

Accordingly, there is due and unpaid plaintiffs from defendant Harris Coal Corporation the sum of Sixteen Thousand Seven Hundred Twenty Dollars and Ninety-nine Cents ($16,-720.99), with interest at the rate of six per cent (6%) per annum or $8,340.26 from and since February 25, 1944, and on $8,380.73 from and since March 25, 1944, for which judgment is given and execution awarded.

Relative to the further claims of plaintiffs' third amended petition, the undersigned fails to find that the money owing plaintiffs by defendant Harris Coal Corporation constituted said defendant in law a trustee thereof, but rather a debtor thereof to plaintiffs, and consequently that wrongful payment of said sum of $16,720.99 by defendant Harris Coal Corporation to defendant Felix Angelo, while none the less making defendant Corporation still liable therefor with in-

terest to plaintiffs, did not thereby make the unobligated payment by said Corporation to Angelo of an equivalent sum of money and its use, profits, benefits or dissipation or loss to or for Angelo or to or for R. C. Harris or L. M. Harris any fund or other property having the established characteristics of a recognized trust; and, therefore, such further claim is dismissed, with judgment accordingly in behalf of said defendants.

As to the Amended Cross-Petition of the defendant Felix Angelo, relative to the first, second, third and fourth causes of action, the undersigned finds from the evidence similarly as was found and reported by the Referee on page 70 of his Report, excepting that the amount of $560 otherwise previously due defendant Angelo from plaintiffs was liquidated April 5, 1944, when Angelo accepted and received credit from defendant Harris Coal Corporation of that part of the amount of $16,720.99 wrongfully paid or credited to him by defendant Corporation, for which payment or credit, unauthorized by plaintiffs, defendant Harris Coal Corporation remains fully liable to plaintiffs although thereby discharging the prior obligation of plaintiffs to defendant Angelo. The undersigned, therefore, finds against said defendant Felix Angelo and for plaintiffs on said defendant's first, second, third and fourth causes of action, which are dismissed accordingly.

The issues and evidence relating to the defendant Felix Angelo's fifth cause of action pose several interesting questions of fact and law. Plaintiffs' contract stipulates its continuance "so long as there remains coal to be mined under said lease or so long as it is profitable to strip and load the coal underlying the above described real estate."

There is considerable conflicting evidence as to whether or not coal remained to be mined under said lease, whether or not it was longer profitable to strip and load the underlying coal, and whether or not plaintiffs and defendant Angelo agreed as to the existence of either condition for termination, and the further question of law as to whether or not nonspeculative damages are ascertainable even if plaintiffs breached said contract with Angelo.

Testimony of conversations between Strietelmeier and Angelo in early and late December, 1943, and early January, 1944, and of conversations between Singer and Angelo in early and late January, 1944, was given by Strietelmeier and Singer, each stating that Angelo agreed that the overburden of rock over the remaining coal and consequent increased expense of continued stripping under the existing contract was rapidly making their stripping unprofitable and that it could not continue profitably beyond February, 1944, at the outside.

The testimony of Angelo throughout was shifty, uncertain, unreliable and obviously prompted by a purpose of expediency on his part and the undersigned cannot escape arriving at the conclusion from the testimony of all three witnesses, Strietelmeier, Singer and Angelo, that the latter acquiesced in the expressed views of the two former that stripping and loading operations could not continue beyond February, 1944, profitably to plaintiffs, and the undersigned so finds and that plaintiffs were not required by defendant Angelo to continue under their contract with him beyond that date.

The foregoing finding and conclusion is further supplemented in another aspect of the evidence. Inasmuch as the undersigned finds and considers that plaintiffs are entitled to recover for coal stripped and loaded by them in January and February, 1944, from defendant Harris Coal Corporation in an amount which defendant Angelo himself not only sought to prevent plaintiffs from obtaining but which he himself later requested, received, accepted and retained for his own use or account, Angelo thereby in actively participating and cooperating to frustrate and attempt to prevent plaintiffs' receipt and collection of stripping and loading charges due them certainly made any question of continued physical operations not only financially unprofitable but financially impossible. Defendant Angelo could not be party to a financial wrong to plaintiffs under his contract with them and then claim liability to him because of their inability or unwillingness to continue minus payments for stripping and loading services already rendered.

The finding of the Referee against all of the defendant Angelo's claims on his first four causes of action except for $560 supports the conclusion that non-payment to plaintiffs of $8340.26, February 25, 1944 and of $8380.73, March 25, 1944, were each without proper cause, that plaintiffs were then entitled to said respective sums less said relatively minor sum of $560, and that the later claim asserted in said defendant's fifth cause of action was then at best contingent upon future default, proof of loss therefrom and ascertainment of damage thereby. Defendant Angelo's own actions in seeking to contrive unfounded grounds for denial to plaintiffs of over $16,000 then admittedly due plaintiffs, as found and considered both by the Referee and the undersigned, fully excused plaintiffs from longer performing under their contract with Angelo, even if he had not expressly agreed to or acquiesced in their views as to the conditions for contract termination as therein provided and even if he afterward suffered loss reasonably ascertainable in damages.

The undersigned therefore considers and determines that there was no basis for damages to defendant Angelo by reason of contract termination on the part of plaintiffs; first, because Angelo agreed with Strietelmeier and Singer in their expressed views that it was no longer profitable to strip and load the underlying coal, and second, because Angelo effectively prevented plaintiffs from receiving payment of money earned and due them under his contract with them, which amount he subsequently induced their debtor to pay or credit to him.

In view of the foregoing findings and determination there is no need or occasion to resolve the extensive evidence as to whether or not coal remained to be mined under said lease or could be profitably stripped and loaded. The undersigned is constrained, however, to remark that upon the evidence of defendant Angelo's operation of Blue Diamond Mine No. 1 there is a distinct impression of inept management and financial debility, no demonstration or even slight indication of any past profit, much less business solvency, and no criterion of any kind whatever for measuring or estimating any future profit or even guessing that he could, much less would, be able to conduct or manage a mining operation profitably at all.

It would seem to the undersigned that if the amount of coal remaining in the lease was abundant and could be stripped and loaded profitably under plaintiffs' contract, and also profitably to defendant Angelo, a new stripping and loading contract with another or others, including whatever additional payment or premium might have been required to obtain it, would be the only manner of establishing loss and damage, in this instance, if not otherwise barred.

"It is fundamental in the law of damages that damage which is uncertain, contingent, or remote is not a proper basis of recovery, and under this general principle the courts have frequently denied recovery for loss of profits upon breach of a contract, on the ground that expected profits are dependent upon uncertain and changing contingencies, and constitute no definite or trustworthy measure of the actual damages; in other words, the law does not permit the recovery of damages which can be ascertained only by speculative methods." (13 O. Jur. 152-3, Sec. 73.)

"Throughout all the authorities, where damages are sought to be recovered, whether for injuries to property or business, or trade, or for personal injuries, there is a clear recognition that the profits of a business are subject to many contingencies, causing fluctuations and uncertainties and ren-

dering the whole subject of the allowance of profits as damages more or less uncertain and speculative." **(13 O. Jur. 160-1, Sec. 78.)**

The amended cross-petition of defendant Felix Angelo is therefore dismissed in its entirety, with respect to each and all of the five causes of action thereof.

The Referee conducted the hearings before him so as to give every consideration to all parties and the utmost latitude for the submission of all possible pertinent evidence, as well as exhaustive study and consideration of all questions and issues of fact and law arising therefrom, and the Referee is thanked and commended therefor, even though the determination and judgment of the court upon the evidence and record of the case is basicly and materially contrary to the Referee's Report, the undersigned as the Court finding and concluding that the Referee's recommendation of judgment against defendant Angelo rather than against defendant Harris Coal Corporation and that his recommendation of judgment in any amount against plaintiffs and for defendant Felix Angelo upon the latter's Amended Cross-Petition are each contrary to the manifest weight of the evidence as well as untenable in the specific respects heretofore set forth and arrived at.

· Nevertheless, the undersigned as the Court finds and considers that said Referee is entitled to payment for his services in an amount worthy of his devoted effort, energy and time, hereby fixed at the sum of Twenty-five Hundred Dollars ($2500.00), which together with all expenses of reporting, filings, service and all other costs, the court taxes against defendant Harris Coal Corporation as the party primarily and directly at fault and responsible for the onset of litigation and its resulting ramifications, including its encouragement, inducement and procurement of the unfounded claims of the said cross-petitioner for its own interest and purposes and that of its associates.

Judgment accordingly, with Journal Entry containing findto be prepared by counsel for plaintiffs and then submitted to counsel for the respective defendants for their consideration of approval before submission to the court for its approval for filing, allowing exceptions to all parties.